**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PHILLIP R. SEAVER TITLE CO., INC.,

    Plaintiff,

v.                                              Case No. 08-CV-11004

GREAT AMERICAN INSURANCE CO.,

    Defendants.
                                              /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the court are Defendant Great American Insurance's "Motion for Summary Judgment" and Plaintiff Phillip R. Seaver Title Company's "Counter-Motion for Summary Judgment and Request for Relief." Both motions have been fully briefed and the court concludes that a hearing on the motions is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion and partially grant Plaintiff's motion.

**I. BACKGROUND**

Plaintiff is a title insurance company, offering escrow services to clients for real estate closings. (Pl.'s Mot. at 1.) Plaintiff employs escrow closing agents, whose job it is to receive clients' money and place it into an escrow account. (*Id.* at 1-2.) During the time period important for this lawsuit, Plaintiff employed Julie Korthals as an escrow closing agent. (Def.'s Br. at 2.) Korthals used her account access, as an escrow closing agent, to take funds meant for various closings and negotiate the funds for her

own personal use.  (Pl.'s Mot. at 3.)  Korthals' embezzlement remained undetected for some time because she used funds from various accounts to cover any shortfalls in other accounts.  (*Id.*)  Eventually though, the scheme collapsed, and on August 21, 2006, Korthals was convicted of felony embezzlement.  (*Id.* at 4.)

At all relevant times, Plaintiff maintained an active "Crime Protection Policy" ("CPP") with Defendant.  (*Id.* at 2; Def.'s Br. at 4.)  In general terms, this policy covers Plaintiff's losses due to its employees' dishonesty.  (*Id.*, Ex. A at 6.)  As a result of Korthals embezzlement, Plaintiff submitted proofs of loss to Defendant, though the dates and quantity of the submissions are not entirely clear.  (*See, e.g.*, Def.'s Br. at 4; *Id.*, Ex. 1, p. 3; Pl.'s Mot., Ex. E)  Defendant admits paying Plaintiff on some of the claims made, because "documentation showed . . . [Plaintiff] had funds belonging to it which were stolen by Ms. Korthals, and which exceed the policy deductible [of $25,000]."  (Def.'s Br. at 4.)  Some time later, Plaintiff submitted an additional claim to Defendant for $377,000.  (Pl.'s Mot. at 4.)  Plaintiff claims this amount, used to replenish funds Korthals embezzled from Plaintiff's escrow account, is a loss covered by the policy.  (*Id.* at 4-5.)[1]  In contrast, Defendant argues that it fulfilled its responsibilities under the policy and is not liable for any money Plaintiff paid into its escrow account. (Def.'s Br. at 4-5.)

---

[1] Plaintiff's complaint contained four counts for recovery.  (Compl. at 3-6.) Neither Plaintiff's nor Defendant's motion refers to these four separate counts, but both encompass the facts and law that make up the separate counts.  As such, the court treats both Plaintiff's and Defendant's motions for summary judgment as constituting the entire dispute between the parties.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

Under the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located.  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)

(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).

### III.  DISCUSSION

It is uncontested that Plaintiff's employee embezzled funds from escrow accounts and that Plaintiff maintained an insurance policy with Defendant.  What is contested, however, is whether those two facts converge to allow Plaintiff recovery under the insurance policy.  As such, the court must determine what the parties agreed to in the policy.  *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992).  To determine what the parties agreed to, the court applies a two-part analysis.  *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 510 (Mich. 1995).  First, the court determines if the policy provides coverage to Plaintiff.  In this case, that involves both looking to the kind of property that is covered (the "interest" clause), and also examining the type of events causing loss, that are covered (the "insuring" clause).  *Vons Cos., Inc. v. Federal Ins. Co.*, 212 F.3d 489, 491 (9th Cir. 2000).  If the policy covers both the kind of property and type of event causing the loss, then the court applies the second part of the analysis and determines if the coverage is negated by an exclusion.  *Buczkowski v. Allstate Ins. Co.*, 526 N.W.2d 589, 594 (Mich. 1994).

In examining the language of the policy, the court must give words their plain and ordinary meaning and cannot create ambiguity where none exists.  *Heniser*, 534 N.W.2d at 505.  If a term is ambiguous, however, the ambiguity is to be construed against the insurer and in favor of coverage.  *Id.* at 504.

## A. The "Interest" Clause

The language that defines the kind of property covered under the CPP is straightforward, "[t]he property covered under this insurance is limited to property: (a) that you own or hold; or (b) for which you are legally liable." (Pl.'s Mot., Ex. A, p. 16-17.) Here, the property in dispute was placed into an escrow account. "Escrow" is "money . . . *held in trust by a third party* to be turned over to the grantee only upon fulfillment of a condition."[2] What is more, Defendant admits that Plaintiff both held money for its clients and had legal liability for the money in escrow. (Def.'s Br. at 6 ("Seaver had to replace the funds held in escrow belonging to third parties . . . .").) Therefore, giving the word "escrow" its plain and ordinary meaning, avoiding the creation of ambiguity, *Heniser*, 534 N.W.2d at 505, and using the understanding even Defendant seemingly adopts, the court finds the money Plaintiff held in escrow was covered under the CPP "interest" clause.

Defendant cites a plethora of case law to support the proposition that the "interest" clause of the CPP does "not create coverage for any liability which the insured may owe to the third party due to the dishonest acts of the insured's employee." (Def.'s Br. at 15.) Defendant is correct; an "interest" clause does not create liability. *Vons Cos., Inc.*, 212 F.3d at 491. The clause merely defines the population of potentially covered property, it does not dictate the end liability under the policy. Defining the covered property is only the first step. *Id.* Having determined that the money Plaintiff

---

[2] Merriam-Webster, *available at* http://www.merriam-webster.com/dictionary/escrow (last visited Sept. 29, 2008) (emphasis added).

held in escrow is covered, the court turns to determine whether the type of event causing the loss is also covered.

## B. The "Liability" Clause

The CPP covers two main types of events, employee dishonesty and forgery or alteration. (Pl.'s Mot., Ex. A, p. 6-7.) Applicable here, the employee dishonesty policy provides coverage for "loss . . . resulting directly from dishonest acts committed by an employee . . . with the manifest intent to: (a) cause you to sustain loss; and also (b) obtain financial benefit . . . for (1) the employee . . . ." (*Id.*) The parties do not dispute that Plaintiff sustained a loss, and that one of Plaintiff's employees obtained financial benefit. (Def.'s Br. at 6, "Seaver had to replace the funds . . . which Ms. Korthals wrongfully appropriated to conceal her thefts.") The parties do dispute, however, whether the loss sustained was direct, and whether Korthals acted with the manifest intent to harm Plaintiff. (Def.'s Mot. at 2.)

### 1. Direct Loss Coverage

The CPP's "liability" clause requires any loss to come "directly" from Plaintiff's employee's dishonest. (Pl.'s Mot., Ex. A, p. 6.) It is undisputed that Plaintiff transferred funds from its own, general account to replace the money taken from its escrow account. (Def.'s Br. at 4.) Defendant maintains that the transfer of money to the escrow account takes the money out of the CPP's coverage, because the funds were only to "reimburse third parties . . . ." (*Id.* at 10.) Such a reading would seem to conflict with the plain and ordinary meaning of a direct loss. Plaintiff's employee stole money from one account, which Plaintiff then replaced from another account. (Def.'s Br. at 4.)

6

When its employee acted dishonestly, Plaintiff's overall funds were directly impacted. Thus, coverage for the transfer of funds follows under the CPP.

To support its contrary position, Defendant cites a number of cases for the general proposition that an insured's reimbursement to a harmed third party is always an indirect loss. (*Id.* at 7-8.) The problem with this conception, though, is that it over-generalizes the facts to which it applies. For example, Defendant relies heavily on *Commerce Bank & Trust v. St Paul Mercury Ins. Co.*, No. 04-1264B, 2005 WL 4881101 (Mass. Super. Jun. 7, 2005), to argue any reimbursement is an indirect loss. But in that case, the insured was a bank, and the loss was caused by a customer's dishonesty, *not* an employee's dishonesty. *Id.* at *2. A customer's relationship to a bank is a very different relationship than here, where an employee and an insured employer are involved.

Defendant also focuses the court on *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*, 205 F.3d 66 (2nd Cir. 2000). (Def.'s Br. at 8.) Again though, Defendant takes a specific fact pattern and attempts to over-generalize it to these facts. *National Union* adopted the idea that there is no direct loss when a employee's dishonesty leads to a lawsuit to determine liability, which then leads to settlement. 205 F.3d at 76. It was the extra steps of both a lawsuit and a settlement that broke the "direct" causation chain in *National Union*; no such extra steps are present here. None of Defendant's remaining cases specifically address an employee who embezzles funds from her employer, where the funds are held in trust for another. Defendant does cite one case mentioning the scenario; but that court reached the opposite conclusion Defendant seeks. *Vons Cos., Inc.*, 212 F.3d at 491 ("A direct loss . . . may, of course, be caused

by [plaintiff's] employee's theft of property for which it is legally liable, the typical case being where the insured is a . . . trustee of property."). Defendant dismisses the statement as "mere dicta, and . . . also not a correct statement of the law." (Def.'s Resp. at 9.) Of course the opinion is not binding on the court, but the reasoning and the applicability of the plain meaning of "direct" loss the *Voss* court relied on is at the very least persuasive.

Finally, to bolster its own position, Plaintiff points to an email Defendant sent on July 28, 2006. In that email, Defendant, by its own words, admits the transfer of funds would be covered under the CPP:

> However, the policy will pay to Seaver Title the amount of the loss Seaver has actually incurred because it was legally liable to pay others. If & when Seaver repays the victim(s) for Korthals' dishonesty, it then becomes Seaver's loss - and in turn part of a payable claim . . . If & when Seaver Title pays [one of Plaintiff's clients] we would add in the amount of the loss to [the client] . . . subtract any remaining deductible, and pay Seaver title the difference. **The same situation applies to the other 3rd Party losses Korthals caused that Seaver chooses to pay** . . . Please advise us immediately when you decide who and how much to pay these third parties, and when your loss appears to exceed your $25,000 deductible.

(Pl.'s Reply, Ex. B) (emphasis added).

Not surprisingly, Plaintiff did expect its later transfer of money into escrow to be covered. (*Id.* at 7.) Taking Defendant's own words, together with the plain meaning of "direct" and applying both to the unique facts of this case, the court concludes as a matter of law that Plaintiff's transfer of funds is the type of "direct" loss envisioned by the CPP.

8

### 2. Manifest Intent Coverage

The parties also dispute whether Korthals acted with the manifest intent to harm Plaintiff when she embezzled funds from Plaintiff's escrow account. (Def.'s Mot. at 2.) Though there is a dearth of Michigan law on the requirement for manifest intent, the court finds the Sixth Circuit's definition instructive, "the concept of 'manifest intent' does not necessarily require that the employee actively wish for or desire a particular result, it does require more than a mere probability." *F.D.I.C. v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1035 (6th Cir. 1991). Further, "manifest intent exists when a particular result is 'substantially certain' to follow from conduct." *Peoples Bank & Trust Co. of Madison County v. Aetna Cas. & Sur. Co.,* 113 F.3d 629, 635 (6th Cir. 1997) (internal quotations omitted).

Defendant charges that Korthals only intended to injure Plaintiff's clients, not Plaintiff. As support, Defendant points to an unpublished Michigan case, holding "[Plaintiff] has failed . . . because it has not shown that the dishonest acts at issue were manifestly intended to cause it to sustain loss of damage." *Five Star Real Estate, LLC v. Kemper Cas. Ins. Co.*, 2006 WL 1294238, *3 (Mich. Ct. App. May 11, 2006). The court fails to see how the holding, without recitation of any facts or a basis for the decision, supports Defendant's position as to the level of intent required under the CPP. As noted in *St. Paul Fire & Marine*, "[e]mbezzlement is a zero-sum game. For the employee to win, the employer must lose." 942 F.2d at 1036. The court cannot delve into Korthals mind to determine whether she intended to harm Plaintiff, but that type of divination is not required. It is enough to conclude as a matter of law that, based on Korthals' conduct, there was substantial certainty Plaintiff would face a financial loss as

a result of her embezzlement. *Peoples Bank & Trust Co. of Madison County,* 113 F.3d at 635. To find otherwise would ignore the nature of an embezzlement. As such, the court finds Plaintiff has shown both a direct loss and the manifest intent required to establish coverage under the "liability" clause of the policy.

### B. The "Exclusions" Clause

Having established a covered interest and liability under the CPP, the court must determine whether any exceptions to coverage apply. *Buczkowski,* 526 N.W.2d at 594. The CPP specifically excludes "[l]oss that is an indirect result of any act or occurrence covered by this insurance including . . . loss resulting from . . . payment of damages of any type for which you are legally liable." (Pl.'s Mot., Ex. A, p. 10.) Defendant contends this clause "excludes claims for the liability which the insured may have to third parties due to dishonest acts of the insured's employees." (Def.'s Br. at 14.) A variety of courts have addressed duplicate or very similar clauses. *See e.g.*, *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 962 F. Supp. 956, 964 (N.D. Tex. 1996); *Commerce Bank & Trust*, 2005 WL 4881101 at *4-5; *Atlas Metals Prods. Co., Inc. v. Lumbermans Mutual Cas. Co.*, 829 N.E.2d 257, 259-60 (Mass. App. Ct. 2005). Importantly, these courts, in excluding coverage under the "indirect loss" clause, do so in the context of litigation over the loss. More simply, the courts view the clauses as excluding legal damages, not actual loss.

The confusion in interpreting this clause likely comes from the policy's use of "legally liable" in two distinct places. In one clause, the phrase provides coverage.[3] In

---

[3] *See* Pl.'s Mot., Ex. A, p. 16-17 "The property covered under this insurance is limited to property: (a) that you own or hold; or (b) for which you are legally liable."

the second clause, at issue here, the phrase works to limit coverage. But the two clauses need not be confused. The "indirect loss" policy includes a modifier which provides context to the phrase "legally liable." Specifically, the clause begins with "[p]ayment of damages of any type . . . ." (Pl.'s Mot., Ex. A, p. 10.) This implies a different sort of legal liability; it implies the sort that results from litigation in which one party is found liable to another and must pay damages. This reading also conforms with courts who found an indirect loss only in the context of litigation over the loss. Those losses are a different kind altogether than the current case, where Plaintiff transferred money directly from one account to another, illegally depleted account. Because the court interprets the "indirect loss" clause to apply to a specific kind of damage payment not present here, the exclusionary clause does not apply. On the whole, the court finds there is no genuine issue of material fact and Plaintiff's CPP covers the kind of property at issue, it covers the type of event that led to the loss, and no exclusion applies. Thus, as a matter of law, Plaintiff is entitled to coverage.

### D. Plaintiff's Claim for Penalty Interest

Plaintiff also includes a claim under M.C.L. § 500.2006, which requires an insurer to pay an insured interest when benefits are not paid in a timely manner, "unless the claim is reasonably in dispute." M.C.L. § 500.2006(1) (Compl. at 5). The determination whether a claim is reasonably in dispute is a matter for the court. *Jones v. Jackson Nat. Life Ins. Co.*, 819 F. Supp. 1372, 1379 (W.D. Mich. 1993). If a defendant has relied on plainly invalid contract clauses or a plainly erroneous interpretation of law, the court may find no reasonable dispute exists. *Id.* Finally, a reasonable dispute can exist even though the remaining causes of action are disposed of under the different standard of

summary judgment. *Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 774 (E.D. Mich. 2000). Here, the court finds the clauses in dispute were not plainly invalid, nor did Defendant rely on plainly erroneous legal interpretations. Therefore, the court finds Plaintiff's insurance claim was "reasonably in dispute" and Plaintiff is not entitled to penalty interest. M.C.L. § 500.2006(1).

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 14] is DENIED.

Further, IT IS ORDERED that Plaintiff's "Counter-Motion for Summary Judgment and Request for Relief" [Dkt. # 17] is GRANTED IN PART. Specifically, it is granted with respect to Plaintiff's coverage under the "Crime Protection Policy" maintained with Defendant.

Finally, IT IS ORDERED that Plaintiff's motion is DENIED IN PART. Specifically, it is denied with respect to Plaintiff's eligibility for penalty interest under M.C.L. § 500.2006.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\08-11004.SEAVER.Order.Grant.SJ.on.Cross.Mots.wpd